IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.W. and HER MOTHER<br>MARY KING-WHITE,<br><br>Plaintiffs,<br><br>v.<br><br>HUMBLE INDEPENDENT SCHOOL<br>DISTRICT, AMANDA MICHELLE<br>FEENSTRA, GUY SCONZO, CHARLES<br>NED, JUAN MELENDEZ, TAMMY<br>MCHALE, CRAIG STOWERS, and<br>ALICIA NARCISSE,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-13-3551 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, A.W. and her mother, Mary King-White, bring this action against defendants, the Humble Independent School District ("HISD"), Amanda Michelle Feenstra ("Feenstra"), Guy Sconzo ("Sconzo"), Charles Ned ("Ned"), Juan Melendez ("Melendez"), Tammy McHale ("McHale"), Craig Stowers ("Stowers"), and Alicia Narcisse ("Narcisse"), for violation of civil rights guaranteed by the United States Constitution under 42 U.S.C. §§ 1983 and 1988, and Title IX of the Education Act of 1972, 20 U.S.C. § 1681. Plaintiffs have also asserted tort claims under the Texas Civil Practice and Remedies Code and the common law of the State of Texas for sexual assault and battery, negligence and gross negligence, bystander recovery, and infliction of emotional distress.

Plaintiffs seek compensatory and exemplary damages, pre- and post-judgment interest, costs of court, attorney's fees, and other relief available at law and in equity to which they might be entitled.

Pending before the court are the Motion to Dismiss of Defendant Humble Independent School District (Docket Entry No. 16); the Motion to Dismiss of Defendants Guy Sconzo, Charles Ned, Juan Melendez, Tammy McHale, Craig Stowers, and Alicia Narcisse (Docket Entry No. 17); Plaintiffs' Motion for Leave to File Surreply to Defendants' Replies to Motions to Dismiss (Docket Entry No. 34); and plaintiffs' requests for leave to amend asserted in Plaintiffs' Response to Humble Independent School District's Motion to Dismiss and Brief in Support (Docket Entry No. 24) and in Plaintiffs' Response to Motion to Dismiss of Defendants Guy Sconzo, Charles Ned, Juan Melendez, Tammy McHale, Craig Stowers, and Alicia Narcisse and Brief in Support (Docket Entry No. 25).  For the reasons set forth below, the pending motions to dismiss and plaintiffs' motion to file surreply will be granted, and plaintiffs' motions for leave to amend will be denied.

## I.  <u>Standard of Review</u>

The individual defendants seek dismissal of all the claims asserted against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.  HISD seeks dismissal of plaintiffs' federal law claims

asserted under Rule 12(b)(6), and seeks dismissal of plaintiffs'
state law claims under Rule 12(b)(1) for lack of subject matter
jurisdiction.

## A.    Rule 12(b)(6) Standard

Under Rule 8 of the Federal Rules of Civil Procedure, a
pleading must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief." Fed. R. Civ.
P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of
the pleadings and is "appropriate when a defendant attacks the
complaint because it fails to state a legally cognizable claim."
Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert.
denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002). The
court must accept the factual allegations of the complaint as true,
view them in a light most favorable to the plaintiff, and draw all
reasonable inferences in the plaintiff's favor. Id. To defeat a
motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead
"enough facts to state a claim to relief that is plausible on its
face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974
(2007). "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly,
127 S. Ct. at 1965). "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Id. (quoting

Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966). Moreover, courts do not accept as true legal conclusions. "[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1950.

**B.    Rule 12(b)(1) Standard**

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual attack challenges the existence of subject matter jurisdiction in fact -- irrespective of the pleadings -- and matters outside the pleadings, such as testimony and affidavits, are considered. Id. Because HISD has not submitted evidence in support of its Rule 12(b)(1) motion to dismiss, the motion is a facial attack on plaintiffs' pleadings, and the court's review is limited to whether the complaint sufficiently alleges jurisdiction.

## II.   Plaintiffs' Factual Allegations

Plaintiff Mary King-White is the mother of A.W. who was a minor during most of the events that give rise to this action.

-4-

Plaintiffs allege that between 2009 and 2011 while A.W. was a student at Humble High School, A.W. was sexually molested on multiple occasions by her same-sex dance teacher, defendant Feenstra. Plaintiffs allege that the abuse began in the spring of 2009 when A.W. was 16 years old, and continued until 2011 when A.W. graduated from Humble High School. Plaintiffs allege that when the abuse began Feenstra instructed A.W. to remain quiet, and A.W. remained quiet. Plaintiffs allege that while the abuse was occurring, A.W.'s grades changed, A.W. withdrew from her classmates and dance teammates, and that with King-White's consent, A.W. went to live in Feenstra's home. Plaintiffs also allege that Feenstra spent excessive amounts of time with A.W. behind closed doors, and that Feenstra took A.W. on personal trips during the school day and on out-of-town trips during which she and A.W. would share a room and a bed.

Plaintiffs allege that the defendant "School Officials" observed these signs of sexual abuse but did nothing. Plaintiffs allege that after A.W. graduated from Humble High School Feenstra called A.W. on the phone and stalked A.W. Eventually A.W. told a former dance instructor about what had happened with Feenstra. After the dance instructor reported A.W.'s story to school authorities, Feenstra was arrested. On October 13, 2013, Feenstra pleaded guilty to an improper relationship with a student and was sentenced to 10 years deferred adjudication and probation.[1]

---

[1]Plaintiffs' Original Complaint, Docket Entry No. 1, pp. 1-15 ¶¶ 1-82, esp. ¶¶ 2, 8, 19, 29, 41, 43, 46, 50, 55, 57-62, 79-82.

### III.  **Analysis**

Plaintiffs assert that defendants' actions make them liable for violations of Title IX of the Education Act of 1972, violations of constitutional rights actionable under 42 U.S.C. § 1983, and violations of Texas law governing the duty to train, supervise, and discipline subordinates, sexual assault and battery, negligence and gross negligence, bystander recovery, and intentional infliction of emotional distress.[2]

### A.  **Count 1:  Title IX Claims Are Subject to Dismissal**

"Count 1 of Plaintiffs' Complaint asserts a claim pursuant to Title IX based upon sexual harassment, rape, and abuse."[3] Defendants argue that plaintiffs' Title IX claims are subject to dismissal because (1) the Title IX claims that King-White asserts on her own behalf are not actionable, (2) the Title IX claims asserted against the individual defendants are not actionable, (3) the Title IX claims based on race discrimination and failure to adopt policies are not actionable, (4) the Title IX claims are all time-barred, and (4) plaintiffs' factual allegations are not sufficient to state a Title IX claim against HISD.

---

[2]Id. at 16-36 ¶¶ 83-176.

[3]Plaintiffs' Response to Humble Independent School District's Motion to Dismiss and Brief in Support ("Plaintiffs' Response to HISD's Motion to Dismiss"), Docket Entry No. 24, p. 7.  See also Plaintiffs' Original Complaint, Docket Entry No. 1, pp. 16-19 ¶¶ 83-95.

1.   <u>Applicable Law</u>

Title IX of the Education Act Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has held that Title IX is enforceable through an implied right of private action against federal funding recipients, <u>Cannon v. University of Chicago</u>, 99 S. Ct. 1946, 1968 (1979), and that monetary damages are available in such actions. <u>Franklin v. Gwinnett County Public Schools</u>, 112 S. Ct. 1028, 1038 (1992). The Court's holding in <u>Franklin</u> established that a federal funding recipient can be held liable for damages in cases involving a teacher's sexual harassment of a student, but did not define the contours of Title IX liability. The Court explained that

> "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 64, 106 S. Ct. 2399, 2404, 91 L.Ed. 49 (1986). We believe the same rule should apply when a teacher sexually harasses and abuses a student. Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe.

<u>Id.</u> at 1037. <u>See</u> <u>Rosa H. v. San Elizario I.S.D.</u>, 106 F.3d 648, 653 (5th Cir. 1997) (acknowledging that under Title IX "[m]inor students who have been subjected to a sexual relationship with their teachers have a private cause of action for monetary

damages"); <u>Doe ex rel. Doe v. Dallas I.S.D.</u>, 153 F.3d 211, 219 (5th Cir. 1998) (recognizing that same-sex sexual harassment is actionable under Title IX).

The Supreme Court addressed the contours of Title IX liability in <u>Gebser v. Lago Vista I.S.D.</u>, 118 S. Ct. 1989 (1998). In <u>Gebser</u> the Court affirmed the Fifth Circuit's holding that "school districts are not liable in tort for teacher-student [sexual] harassment under Title IX unless an employee who has been invested by the school board with supervisory power over the offending employee actually knew of the abuse, had the power to end the abuse, and failed to do so." <u>Id.</u> at 1994 (quoting <u>Doe v. Lago Vista I.S.D.</u>, 106 F.3d 1223, 1226 (5th Cir. 1997) (quoting <u>Rosa H.</u>, 106 F.3d at 655)). The <u>Gebser</u> petitioners argued to the Supreme Court that "in light of <u>Franklin</u>'s comparison of teacher-student harassment with supervisor-employee harassment, agency principles should likewise apply in Title IX actions." <u>Id.</u> at 1995. Citing a "Policy Guidance" issued by the Department of Education (DOE), the petitioners argued that school districts should be held

> liable in damages under Title IX where a teacher is "aided in carrying out the sexual harassment of students by his or her position of authority with the institution," irrespective of whether school district officials had any knowledge of the harassment and irrespective of their response upon becoming aware.

<u>Id.</u> The petitioners also argued that "a school district should at a minimum be liable for damages based on a theory of constructive

notice, *i.e.*, where the district knew or 'should have known' about harassment but failed to uncover and eliminate it."   Id.

Asserting that "[b]oth standards [advanced by the petitioners] would allow a damages recovery in a broader range of situations than the rule adopted by the Court of Appeals, which hinges on actual knowledge by a school official with authority to end the harassment," Gebser, 118 S. Ct. at 1995, the Supreme Court acknowledged that "[w]hether educational institutions can be said to violate Title IX based solely on principles of *respondeat superior* or constructive notice had not been resolved by Franklin's citation of Meritor [Savings]."   Id.   Then, explaining that Franklin's reference to Meritor Savings "was made with regard to the general proposition that sexual harassment can constitute discrimination on the basis of sex under Title IX," was not in dispute, the Court rejected the petitioners' reliance on principles of *respondeat superior* and constructive notice because,

> Meritor's rationale for concluding that agency principles
> guide the liability inquiry under Title VII rests on an
> aspect of that statute not found in Title IX: Title VII,
> in  which  the  prohibition  against  employment
> discrimination runs against "an employer," 42 U.S.C.
> § 2000e-2(a), explicitly defines "employer" to include
> "any agent," § 2000e(b). . . Title IX contains no
> comparable reference to an educational institution's
> "agents," and so does not expressly call for application
> of agency principles.

Id. at 1996.  Reasoning that "it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of

*respondeat superior* or constructive notice, *i.e.*, without actual notice to a school district official," <u>id.</u> at 1997, the Court emphasized its "central concern . . . with ensuring that 'the receiving entity of federal funds [has] notice that it will be liable for a monetary award.'" <u>Id.</u> at 1998.  Accordingly, the <u>Gebser</u> Court held that

> in cases like this one that do not involve official policy of the recipient entity, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.

> We think, moreover, that the response must amount to deliberate indifference to discrimination.  The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation.  That framework finds a rough parallel in the standard of deliberate indifference.  Under a lower standard, there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions.  Comparable considerations led to our adoption of a deliberate indifference standard for claims under § 1983 alleging that a municipality's actions in failing to prevent a deprivation of federal rights was the cause of the violation.

<u>Id.</u> at 1999.

Applying the actual knowledge/deliberate indifference framework to the facts before it, the Court characterized the outcome as "fairly straightforward." <u>Gebser</u>, 118 S. Ct. at 1999. The Court explained that

> [t]he only official alleged to have had information about
> [the teacher's] misconduct is the high school principal.
> That information, however, consisted of a complaint from
> parents of other students charging only that [the
> teacher] had made inappropriate comments during class,
> which was plainly insufficient to alert the principal to
> the possibility that [the teacher] was involved in a
> sexual relationship with a student.   Lago Vista,
> moreover, terminated [the teacher's] employment upon
> learning of his relationship with [the complainant].
> Justice STEVENS points out in his dissenting opinion that
> [the teacher] of course had knowledge of his own actions
> . . . Where a school district's liability rests on actual
> notice principles, however, the knowledge of the
> wrongdoer himself is not pertinent to the analysis.

Id. at 2000.   Thus, following the Supreme Court's decision in

Gebser, plaintiffs seeking damages for a teacher's sexual

harassment of a student must show that (1) an employee of a federal

funding recipient with supervisory power over the alleged harasser

(2) had actual knowledge of the harassment and (3) responded with

deliberate indifference.   Gebser, 118 S. Ct. at 1999.

A year later in Davis Next Friend LaShonda D. v. Monroe County

Board of Education, 119 S. Ct. 1661 (1999), the Supreme Court held

that a funding recipient that does not engage in harassment

directly may not be liable for damages unless its deliberate

indifference subjects its student to harassment.   The Court

explained that "the deliberate indifference must, at a minimum,

'cause [students] to undergo' harassment or 'make them liable or

vulnerable' to it."   Davis, 119 S. Ct. at 1672.   Thus, it is not

the harassment itself that constitutes the Title IX violation but,

instead, the deliberate failure to curtail known harassment.   Id.

Moreover, "the harassment must occur 'under' 'the operations of' a

funding recipient, meaning that "the harassment must take place in a context subject to the school district's control."  Id.   The Court explained that

> [t]hese factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs.  Only then can the recipient be said to "expose" its students to harassment or "cause" them to undergo it "under" the recipient's programs.

Id.

### 2.   Application of the Law to the Alleged Facts

(a)   King-White's Title IX Claims Are Not Actionable

Asserting that "Mary King-White, plaintiff's mother, appears to seek damages for a violation of Title IX,"[4] defendants argue that "King-White lacks standing to pursue any individual claims under Title IX."[5]  Citing cases from the Third Circuit, plaintiffs respond that "[t]he ability to pursue a claim for past and future medical expenses incurred or to be incurred by parents in the care of their minor child is well-settled law."[6]   Plaintiffs also respond that "Mary King-White would have standing, if necessary as next friend to assert claims on A.W.'s behalf."[7]

---

[4]Motion to Dismiss of Defendant Humble Independent School District ("HISD's Motion to Dismiss"), Docket Entry No. 16, p. 4.

[5]Id.

[6]Plaintiffs' Response to HISD's Motion to Dismiss, Docket Entry No. 24, p. 13.

[7]Id. at 13-14.

Plaintiffs' argument that King-White is able to assert individual claims under Title IX is foreclosed by the Fifth Circuit's holding in Rowinsky v. Bryan I.S.D., 80 F.3d 1006, 1010 n.4 (5th Cir.), cert. denied, 117 S. Ct. 165 (1996), that

> nothing in the statutory language provides [a parent] with a personal claim under title IX. Even assuming that title IX protects persons other than students and employees, [the parent] has failed [to] assert that she was excluded from participation, denied the benefits of, or subjected to discrimination under any education program or activity. Absent such a claim, the plain language of title IX does not support a cause of action by [the parent].

King-White's claims are therefore foreclosed because plaintiffs fail to allege that King-White sought medical services or incurred medical expenses for A.W. while she was a minor arising from the incidents at issue in this case. Nor is King-White able to assert claims as next friend of A.W. because the facts alleged in the plaintiffs' complaint show that A.W. was not a minor when this action was filed. Plaintiffs allege that when the abuse began in the spring of 2009, A.W. was 16 years old. Therefore, A.W. must have reached the age of majority in the spring of 2011, and could not have been a minor when this action was filed over two years later on December 4, 2013. Accordingly, the court concludes that any Title IX claims that King-White has asserted or attempted to assert individually on her own behalf are not actionable under the alleged facts.

          (b)  Title IX Claims Asserted Against the Individual Defendants Are Not Actionable

Citing Fitzgerald v. Barnstable School Committee, 129 S. Ct. 788 (2009), the individual defendants argue that they are entitled to dismissal of the Title IX claims asserted against them because claims based on Title IX are not cognizable against individual school employees.  The individual defendants explain that "[b]ecause individual school employees do not receive federal grant money, a plaintiff cannot state a claim against individual defendants under Title IX."[8]  In Fitzgerald the Supreme Court acknowledged that Title IX applies to "institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), . . . but [Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." Id. at 796.  See also Chestang v. Alcorn State University, 820 F. Supp. 2d 772, 778 (S.D. Miss. 2011) ("Title IX permits actions only against 'programs or activities that receive federal financial assistance' and not against individuals.").  Plaintiffs do not dispute defendants' contention that Title IX claims asserted against individuals are not actionable.  Therefore, the individual defendants are entitled to dismissal of the Title IX claims asserted against them in this action.

---

     [8]Motion to Dismiss of Defendants Guy Sconzo, Charles Ned, Juan Melendez, Tammy McHale, Craig Stowers, and Alicia Narcisse ("Individual Defendants' Motion to Dismiss"), Docket Entry No. 17, pp. 3-4.

      (c)  Title IX Claims Based on Race Discrimination and
           Failure to Adopt Policies Are Not Actionable

Asserting that "A.W. was an African-American female student at Humble High School and, as such, a member of two protected classes under Title IX,"[9] plaintiffs claim that A.W. was subjected to "offensive sexual harassment and sexual abuse, as well as racial and gender discrimination" in violation of Title IX.[10]  Plaintiffs' race discrimination claim is not actionable under Title IX because Title IX does not prohibit race discrimination.  See Sanches v. Carrollton-Farmers Branch I.S.D., 647 F.3d 156, 166 (5th Cir. 2011) ("harassment 'on the basis of sex is the sine qua non of a Title IX sexual harassment case'").

Plaintiffs allege that in light of the known circumstances HISD acted unreasonably by "fail[ing] to establish sexual abuse and harassment policy in accordance with the Texas Education Code, Texas Administrative Code, or Texas Family Code," and by "fail[ing] to adopt and implement policy addressing sexual abuse and maltreatment of children, to be included in the district improvement plan under Section 11.252 and any informational handbook provided to students and parents."[11]  Citing Gebser, 118 S. Ct. at 2000, HISD argues that "[t]he claim that HISD failed to

---

[9]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 85.

[10]Id. ¶ 88.

[11]Id. ¶ 94(f)-(g).

adopt policies is not actionable."[12]   In <u>Gebser</u> the Supreme Court
rejected the petitioners' attempt to ground liability on the school
district's failure to promulgate and publicize an effective policy
and grievance procedure for sexual harassment claims as required by
the Department of Education's regulations.   The Court explained:

> Lago Vista's alleged failure to comply with the
> regulations . . . does not establish the requisite actual
> notice and deliberate indifference.   And in any event,
> the failure to promulgate a grievance procedure does not
> itself constitute "discrimination" under Title IX.

118 S. Ct. at 2000.   Plaintiffs' attempt in this case to ground
their Title IX claims on HISD's failure to insure that officials at
Humble High School adopted and/or implemented policies aimed at
preventing sexual abuse of students is similarly insufficient to
state a claim under Title IX because such failure is neither
actionable under Title IX nor capable of proving actual knowledge
of abuse required to hold a school district liable under Title IX.

In addition to damages, plaintiffs ask "[t]hat Humble ISD be
required to initiate policies and training to enable staff to
recognize and promptly investigate improper teacher-student
interaction, stop harassment; and enforce laws against sexual
assaults."[13]   Since A.W. has graduated from Humble High School, any
claim for injunctive relief that plaintiffs are asserting or
attempting to assert under Title IX is not actionable.   <u>See</u>

---

[12]HISD's Motion to Dismiss, Docket Entry No. 16, p. 11.

[13]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 172.

Pederson v. Louisiana State University, 213 F.3d 858, 874, 877 (5th Cir. 2000) (finding Title IX claims for injunctive relief mooted by student's graduation); Sapp v. Renfroe, 511 F.2d 172, 175 (5th Cir. 1975) (holding that graduation mooted student's claim for declaratory relief).

> (d) Plaintiffs' Title IX Claims Are Time-Barred

> **(1) Applicable Statute of Limitations Is Texas's General Statute for Personal Injury Claims**

Citing Wilson v. Garcia, 105 S. Ct. 1938 (1985), superseded on other grounds by 28 U.S.C. § 1658(a), as recognized in Jones v. R.R. Donnelley & Sons Co., 124 S. Ct. 1836 (2004), and Owens v. Okure, 109 S. Ct. 573 (1989), defendants argue that plaintiffs' Title IX claims are subject to dismissal because they are barred by Texas's two-year statute of limitations for general personal injury claims, Texas Civil Practices & Remedies Code § 16.003.[14] Plaintiffs respond that their Title IX claims are not time barred because the applicable statute of limitations is not the general two-year statute cited by defendants but, instead, Texas's five-year statute of limitations for personal injury claims arising from conduct that violates Texas law prohibiting sexual assault, Texas Civil Practices & Remedies Code § 16.0045(a). Plaintiffs cite a number of cases that have applied Texas's five-year statute of

---

[14]HISD's Motion to Dismiss, Docket Entry No. 16, pp. 7-9; Defendant Humble Independent School District's Reply to Plaintiffs' Response to Motion to Dismiss ("HISD's Reply"), Docket Entry No. 27, pp. 1-4.

limitations to claims asserted under state law, but have not cited
any case applying the five-year statute to claims asserted under
Title IX or 42 U.S.C. § 1983.[15]

A complaint is subject to dismissal under Rule 12(b)(6) for
failure to state a claim on which relief may be granted when the
affirmative defense clearly appears on the face of the complaint.
White v. Padgett, 475 F.2d 79, 82 (5th Cir.), cert. denied, 94
S. Ct. 78 (1973). Congress has not provided a statute of limita-
tions for claims brought under Title IX. Congress has similarly
not provided a statute of limitations for civil rights claims
brought under 42 U.S.C. § 1983. However, in Wilson, 105 S. Ct. at
1941, the Supreme Court held that civil rights claims arising under
42 U.S.C. § 1983 within a particular state should be governed by
that state's statute of limitations for personal injury claims.
Every appellate court to consider the issue has held that Title IX
claims should be treated like § 1983 claims and governed by state
statutes of limitations for personal injury claims. See Walker v.
Barrett, 650 F.3d 1198, 1205 (8th Cir. 2011); Wilmink v. Kanawha
Cnty. Bd. of Educ., 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (per
curiam); Stanley v. Trustees of Cal. State Univ., 433 F.3d 1129,
1134 (9th Cir. 2006); Small v. Chao, 398 F.3d 894, 899 (7th Cir.

---

[15]Plaintiffs' Response to HISD's Motion to Dismiss, Docket
Entry No. 24, pp. 36-37; Plaintiffs' Surreply to Motions to Dismiss
of Defendants Humble Independent School District, Guy Sconzo,
Charles Ned, Juan Melendez, Tammy McHale, Craig Stowers and Alicia
Narcisse ("Plaintiffs' Surreply to Defendants' Motions to
Dismiss"), Docket Entry No. 34-1, pp. 2-4.

2005); <u>Curto v. Edmundson</u>, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam), <u>cert. denied</u>, 125 S. Ct. 2944 (2005); <u>M.H.D. v. Westminster Sch.</u>, 172 F.3d 797, 803 & n.14 (11th Cir. 1999); <u>Lillard v. Shelby Cnty. Bd. of Educ.</u>, 76 F.3d 716, 729 (6th Cir. 1996); and <u>Bougher v. Univ. of Pittsburgh</u>, 882 F.2d 74, 77-78 (3d Cir. 1989).

Plaintiffs' argument that their Title IX claims are not governed by Texas's two-year limitations period for personal injury claims but, instead, by Texas's five-year limitations period for sexual assault claims is foreclosed by the Supreme Court's decision in <u>Owens</u>, 109 S. Ct. at 573. In <u>Owens</u>, 109 S. Ct. at 582, the Supreme Court specifically rejected the argument that the statute of limitations applicable to any given § 1983 claim should depend on the particular facts or precise legal theories alleged. Instead, the Supreme Court held that claims arising under § 1983 within a particular state should be governed by that state's "general or residual statute for personal injury actions." <u>Id.</u> See also <u>Piotrowski v. City of Houston</u>, 51 F.3d 512, 514 n.5 (5th Cir. 1995) (holding that in light of the fact that Congress has not provided a statute of limitations in § 1983 cases, federal courts borrow the forum state's general personal injury limitations period). Thus, merely because plaintiffs' Title IX claims are predicated on sexual abuse does not mean that the applicable statute of limitations is Texas's special limitations statute for sexual assault claims. See <u>Nunley v. Pioneer Pleasant Vale School</u>

District No. 56, 190 F. Supp. 2d 1263, 1265 n.1 (W.D. Okla. 2002) (rejecting a similar argument regarding Title IX claims asserted in Oklahoma which, like Texas, has a special statute of limitations for sexual assault claims).  Because plaintiffs have not cited any case that has applied Texas's special statute of limitations for sexual assault claims, as opposed to Texas's general statute of limitations for personal injury claims, to claims asserted under Title IX or 42 U.S.C. § 1983, the court concludes that the Title IX claims asserted here are governed by Texas's two-year limitations period for general personal injury claims.

### (2)   Application of the Limitations Period to the Alleged Facts

Plaintiffs filed their Original Complaint on December 4, 2013. Accordingly, plaintiffs cannot prevail if the Title IX claims asserted accrued before December 4, 2011.  HISD argues that any injury A.W. suffered as a result of its alleged inaction occurred prior to that date, and that A.W.'s Title IX claims are therefore time-barred.[16]

The question of when a cause of action accrues is a question of federal law.  The Fifth Circuit has held that in civil rights cases, a cause of action accrues, and the limitations period begins to run, "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'"  Piotrowski, 237 F.3d at 576 (quoting Russell

---

[16]HISD's Motion to Dismiss, Docket Entry No. 16, p. 8.

v. Board of Trustees, 968 F.2d 489, 493 (5th Cir. 1992)).   A
plaintiff's awareness encompasses both knowledge of the injury and
knowledge of the causal link between the injury and the defendant.
The plaintiff need not know that a legal cause of action exists;
she need only know facts that would support a claim.   Id.

     Plaintiffs allege that the abuse underlying the claims
asserted in this action occurred from 2009 to 2011.   Plaintiffs
allege that A.W. was a freshman during the 2007-2008 school year,
that A.W. was 16 years old when Feenstra began abusing her in the
spring of 2009, and that the abuse continued until A.W. graduated
in 2011.   HISD argues that

> [i]f one assumes that A.W. was physically abused until the
> last day of school of her senior year (i.e., through May
> 2011), then A.W. would have had until May 2013 to file
> suit.   The Plaintiffs plainly knew about the abuse prior
> to May 2013.   The Plaintiffs admit that Feenstra was
> arrested in March 2013 after A.W. reported the abuse.[17]

Plaintiffs do not dispute that all the abuse described in the
complaint occurred more than two years before they filed this
action on December 4, 2013, or that A.W. had reached the age of 18
by the spring of 2011.   The allegations contained in plaintiffs'
complaint show that A.W. had both knowledge of the injury and
knowledge of the causal link between the injury and HISD from the
moment the injury began but refrained from reporting the injury.[18]

---

     [17]HISD's Reply, Docket Entry No. 27, p. 2 (citing Plaintiffs'
Original Complaint, Docket Entry No. 1, ¶¶ 80-81).

     [18]See Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 43
("Fearing the consequences of reporting what happened in Feenstra's
                                                   (continued...)

See Doe v. Henderson I.S.D., 237 F.3d 631, *2 (5th Cir. 2000) (per curiam) (Table) (holding that civil rights causes of action arising from sexual assault accrued prior to the plaintiffs' eighteenth birthdays, and explaining that "[t]he plaintiffs' causes of action accrued when they realized the conduct was wrong because it was at that time that the plaintiffs 'kn[ew] or ha[d] reason to know of the injury which is the basis of the[ir claims]'"). Even though the limitations period on A.W.'s claims could not have started to run before A.W. reached the age of majority, since plaintiffs allege that A.W. was 16 years old in the spring of 2009, A.W. must have been 18 in the spring of 2011, which was more than two years before this action filed on December 4, 2013. Therefore, absent tolling, plaintiffs' Title IX claims are time-barred.

### (3) Equitable Tolling, the Discovery Rule, and Doctrines of Fraudulent Concealment and/or Equitable Estoppel Are Not Applicable

Plaintiffs make three tolling arguments in opposition to HISD's motion to dismiss. First, plaintiffs argue that equity dictates application of the discovery rule.[19] Citing Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996),

---

[18](...continued)
car, a 16-year old A.W. remained quiet."); ¶ 50 ("A.W. was clearly uncomfortable with all of Feenstra's conduct but did not know where to turn since she was Feenstra's student and felt that no one at the school would support her.").

[19]Plaintiffs' Response to HISD's Motion to Dismiss, Docket Entry No. 24, pp. 39-40.

plaintiffs argue that "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."[20]   Then, citing Computer Associates International, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1996), and S.V. v. R.V., 933 S.W.2d 1, 7 (Tex. 1996), plaintiffs argue that the Texas Supreme Court has applied the discovery rule when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."[21]   Plaintiffs argue that

> it is clear that A.W. did not discover the nexus between the abuse she suffered and HISD's approval and ratification of the conduct until facts were revealed during Feenstra's criminal conviction.   The innate details of HISD's involvement in allowing the sexual abuse to occur were inherently undiscoverable earlier.[22]

Finally, citing Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983), and Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 515-16 (Tex. 1998), plaintiffs argue that the statute of limitations should be tolled because HISD fraudulently concealed its knowledge and ratification of the sexual abuse and, therefore, is equitably estopped from invoking the statute of limitations to bar plaintiffs' claims.[23]   Plaintiffs argue that their

---

[20] Id. at 39.

[21] Id.

[22] Id. at 40.

[23] Id. at 40-41.

-23-

Complaint alleges that HISD had knowledge of the sexual harassment and abuse, had a duty to disclose, and a fixed purpose to conceal the wrong.  As a result of HISD's concealment, until facts were revealed during the investigation into Feenstra's criminal acts, A.W. was unable to determine that she had a cause of action specifically against HISD and the individual officials for their complicity in the sexual abuse and/or negligence in allowing it to occur.  Therefore, HISD is precluded from relying on the defense of limitations.[24]

Plaintiffs' equitable tolling argument has no merit because plaintiffs have not alleged that HISD actively misled them about any cause of action or did anything to prevent them from asserting their rights.  See Rashidi, 96 F.3d at 128 ("Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.").  "Where, as here, the plaintiff had ample time and opportunity to bring suit within the statutory period, enlarging the limitations period would defeat the [statute of limitations'] legislative purpose."  Id. at 127.

Plaintiffs' argument that the discovery rule applies to their Title IX claims likewise has no merit.  The discovery rule provides a limited exception to statutes of limitations.  Computer Associates, 918 S.W.2d at 455.  The discovery rule applies in cases where the injury is inherently undiscoverable within the limitations period and objectively verifiable.  Id. at 456 (citing S.V., 933 S.W.2d at 4-8).  See also Beavers v. Metropolitan Life Ins. Co., 566 F.3d 436, 439 (5th Cir. 2009).  Discovery of the

---

[24]Id. at 41.

injury, not all of the elements of the cause of action, starts the limitations clock. Henderson I.S.D., 237 F.3d 631, *6 (citing Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co., 866 S.W.2d 740, 743 (Tex. App. — Houston [14th Dist.] 1993, writ denied) ("[A]ll that is required to commence the running of the limitations period is the discovery of *an* injury and its *general* cause, not the exact cause in fact and the specific parties responsible.")). As discussed in the previous section, A.W. knew that she had been injured by Feenstra by the time of her eighteenth birthday, which was more than two years before plaintiffs filed this action. A.W. also knew that Feenstra was employed by HISD as that was the context in which she came into contact with Feenstra. Since by her eighteenth birthday A.W. knew that she had been injured by Feenstra and that Feenstra was employed by HISD, the discovery rule is not applicable because for limitations purposes, there was nothing left for A.W. to discover. See Henderson I.S.D., 237 F.3d 631, *6 (citing Bayou Bend, 866 S.W.2d at 742) ("The discovery rule imposes a duty on the plaintiff to exercise reasonable diligence to discover facts of negligence or omission."). For this same reason plaintiffs' contention that equitable estoppel and/or the doctrine of fraudulent concealment applies to prevent HISD from asserting limitations has no merit.

Under the doctrine of fraudulent concealment

> [w]here a defendant is under a duty to make disclosure
> but fraudulently conceals the existence of a cause of
> action from the party to whom it belongs, the defendant

is estopped from relying on the defense of limitations
until the party learns of the right of action or should
have learned thereof through the exercise of reasonable
diligence.

Borderlon, 661 S.W.2d at 908.  The estoppel effect of fraudulent

concealment lasts only until "a party learns of facts, conditions,

or circumstances which would cause a reasonably prudent person to

make inquiry, which, if pursued, would lead to discovery of the

concealed cause of action.  Id. at 909.  To invoke equitable

estoppel, a party must prove:

> (1) a false representation or concealment of material
> facts; (2) made with knowledge, actual or constructive,
> of those facts; (3) with the intention that it should be
> acted on; (4) to a party without knowledge or means of
> obtaining knowledge of the facts; (5) who detrimentally
> relies on the representations.

Johnson & Higgins, 962 S.W.2d at 515-16.  The effect of such

estoppel is not to suspend the running of the statute of

limitations but, instead, "to preclude the defendant from

interposing limitations when it has induced the plaintiffs not to

file suit, within the limitations period, on a cause of action the

plaintiffs know they have."  Henderson I.S.D., 237 F.3d at 631, *7

(quoting Palais Royal, Inc. v. Gunnels, 976 S.W.2d 837, 849 (Tex.

App. — Houston [1st Dist.] 1998, writ dism'd by agr.)).  Here,

plaintiffs fail to allege facts capable of proving that HISD was

under a duty to make disclosure but fraudulently concealed the

existence of a Title IX cause of action, or that HISD made any

false representations or concealed material facts on which either

plaintiff relied to their detriment.  Morever, the facts alleged in

-26-

plaintiffs' complaint show that by A.W.'s eighteenth birthday, A.W. had learned of facts that would cause a reasonably prudent person to make inquiry, which if pursued would lead to discovery of a Title IX claim against HISD.  Accordingly, neither the doctrine of fraudulent concealment nor the doctrine of equitable estoppel prevents HISD from asserting limitations in defense of the Title IX claims asserted against it in this action.

> (e)  Factual Allegations Are Not Sufficient to State Title IX Claims Against HISD

HISD argues that the Title IX claims asserted against it are subject to dismissal because plaintiffs have failed to allege facts capable of proving that an HISD official had actual knowledge that A.W. was being sexually abused, or that there was a substantial risk that such abuse would occur.[25]  Courts are in general agreement that for a school district to be held liable under Title IX, the district's knowledge must encompass either actual knowledge of the precise instance of abuse giving rise to the case at hand, or actual knowledge of substantial risk that such abuse would occur.[26] See Rosa H., 106 F.3d at 652-53 ("when a teacher sexually abuses a student, the student cannot recover from the school district under Title IX unless the school district actually knew that there was a substantial risk that sexual abuse would occur").

---

[25]HISD's Motion to Dismiss, Docket Entry No. 16, pp. 12-17; HISD's Reply, Docket Entry No. 27, p. 7.

[26]Plaintiffs' Response to HISD's Motion to Dismiss, Docket Entry No. 24, p. 8 (citing Ross v. Corporation of Mercer University, 506 F. Supp. 2d 1325, 1347-48 (M.D. Ga. 2007)).

(1)  **Alleged Facts Are Not Capable of Proving HISD's Actual Knowledge of A.W.'s Sexual Abuse**

Citing ¶¶ 55-69 and 86-95 of their complaint, plaintiffs argue that they have alleged facts capable of proving that appropriate HISD officials had actual and/or constructive knowledge of the sexual harassment and abuse that A.W. suffered while in HISD's care.[27] In the section of their complaint titled "SCHOOL OFFICIALS ARE AWARE OF THE IMPROPER TEACHER-STUDENT RELATIONSHIP BETWEEN FEENSTRA AND A.W. BUT DO NOTHING," plaintiffs allege:

> 55.  During the period of Feenstra's inappropriate relationship with A.W., **School Officials** noticed that A.W.'s grades were changing, but did nothing to investigate or stop Feenstra's relationship or interaction with A.W.
>
> 56.  During the period of Feenstra's inappropriate relationship with A.W., parents and other students repeatedly complained about the obsessive and unusual relationship Feenstra had with A.W., but **School Officials** did nothing to investigate or stop Feenstra's relationship or interaction with A.W.
>
> 57.  During the period of Feenstra's inappropriate relationship with A.W., **School Officials** noticed that A.W. was becoming withdrawn from her classmates and teammates, but did nothing to investigate or stop Feenstra's relationship or interaction with A.W.
>
> 58.  During the period of Feenstra's inappropriate relationship with A.W., **School Officials** noticed that Feenstra, almost on a daily basis, would leave the school grounds alone with A.W., but did nothing to investigate or stop Feenstra's relationship or interaction with A.W.
>
> 59.  During the entire period of Feenstra's inappropriate relationship with A.W., **School Officials** repeatedly observed first-hand that A.W. was spending an

---

[27]Id. at 7-13.

inordinately excessive amount of time in Feenstra's
office with the doors closed, but did nothing to
investigate or stop Feenstra's relationship or
interaction with A.W.

60.   During the entire period of Feenstra's inappropriate
relationship with A.W., **School Officials** knew that
Feenstra went on out-of-town trips with A.W., where
parents were not there as chaperons, but did nothing to
investigate or stop Feenstra's relationship or
interaction with A.W.

61.   During the entire period of Feenstra's inappropriate
relationship with A.W., **School Officials** knew that while
attending school-related events Feenstra was sleeping in
the same bed with A.W., but did nothing to investigate or
stop Feenstra's relationship or interaction with A.W.

62.   The **School Officials** knew that A.W. (a student) had
moved into the home of a teacher (Feenstra), but did
nothing to stop Feenstra's relationship or interaction
with A.W.

63.   During the entire period, Humble High School had one
or more police officers at the school, whose office was
located next to the dance room, where several sexual
assaults took place.  Yet the police did not investigate
or report the late hours that Feenstra spent in the dance
office with A.W.   This blatant omission clearly
emboldened Feenstra.

64.   Although the **School Officials** would tell parents and
students that they would investigate the complaints about
Feenstra's relationship with A.W., they never did.

65.   Feenstra was never disciplined by Defendants for the
inappropriate relationship she had with A.W. or for any
of the conduct complained of herein.

66.   Feenstra, not being the subject of any surveillance
or monitoring, was able to perpetrate the harassment and
sexual assaults upon A.W., both at school and away.
Instead of conducting any type of investigation of
Feenstra's conduct, **School Officials** allowed Feenstra to
have her way with A.W.

67.   Feenstra, not continually being the subject of
surveillance or monitoring due to an inadequate or

malfunctioning security system, was able to perpetrate the harassment and sexual assaults upon A.W., both at school and away.    Instead of conducting any type of investigation of Feenstra's conduct, **School Officials** allowed Feenstra to have her way with A.W.

68.    During the time A.W. was being sexually assaulted by Feenstra, **all persons in power at Humble High School** knew or should have known of the inappropriate relationship Feenstra had with A.W. including, but not limited to, the harassment, groping, sexual assaults, and rape that Feenstra committed upon A.W.

69.    Considering that the **School Officials** observed the inappropriate teacher-student relationship and did nothing to stop it, A.W. understandably felt powerless to prevent Feenstra's conduct since she had no one at the school to rely upon and protect her from this conduct.[28]

Plaintiffs assert that these facts are capable of proving that

[a]t a minimum, the School Officials had actual notice of the discrimination against A.W. as well as the inappropriate relationship between Feenstra and A.W. since certain of the conduct happened openly and the School Officials were otherwise informed of other improper conduct.[29]

Plaintiffs allege that A.W.'s mother, King-White complained about an "improper relationship" between A.W. and Feenstra,[30] but missing from plaintiffs' complaint are any allegations that King-White ever told any HISD official that the "improper relationship" at issue was a sexual relationship.  Plaintiffs allege that during out-of-town dance competitions, "Feenstra ordered A.W. to sleep in

---

[28]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶¶ 55-69 (emphasis added).

[29]<u>Id.</u> ¶ 87.

[30]<u>Id.</u> ¶ 107.

the same bed with her,"[31] but missing from plaintiffs' complaint are any allegations of fact capable of proving that any HISD official participated in the out-of-town trips or would otherwise have known about the alleged sleeping arrangements.   Plaintiffs allege that "'School Officials' had actual notice of the inappropriate relationship between Feenstra and A.W. since certain of the conduct happened openly, and the School Officials were otherwise informed of other improper conduct,"[32] but missing from plaintiffs' complaint are any allegations that sexual conduct occurred in open view at school or at school events, or that apart from Feenstra any "School Officials" knew about the sexual conduct until after A.W. had graduated.[33]

Although plaintiffs allege facts capable of proving that "Feenstra insisted that A.W. have sex with her at Humble High School, including in Feenstra's office, on the floor of school's dance room, at training camp, and after most every football game,"[34] missing from plaintiffs' complaint are any allegations capable of proving that any school official observed or could otherwise have known about any of this alleged sexual conduct.   Plaintiffs also allege that A.W. moved into Feenstra's residence with the consent

---

[31]Id. ¶ 94(l).

[32]Id. ¶ 87.

[33]Id. ¶¶ 80-82.

[34]Id. ¶ 53.

of her mother and co-plaintiff, King-White,[35] that only after A.W. graduated did A.W. speak to anyone about Feenstra's conduct, and that once HISD officials learned of the alleged abuse, Feenstra was arrested, charged with a felony, and ultimately convicted.[36]

Plaintiffs' factual allegations and arguments regarding HISD's knowledge of A.W.'s abuse are analogous to the arguments that the Supreme Court in <u>Gebser</u>, 118 S. Ct. at 1989, rejected as insufficient to establish a school district's liability under Title IX. Plaintiffs allege that "[d]uring the time A.W. was being sexually assaulted by Feenstra, **all persons in power at Humble High School** knew or should have known of the inappropriate relationship Feenstra had with A.W."[37] Plaintiffs argue that these "allegations of actual or constructive knowledge are plainly stated."[38] In <u>Gebser</u> the Supreme Court rejected the petitioners' arguments that complaints about a teacher's inappropriate comments during class alerted the principal to the possibility that the teacher was involved in a sexual relationship with a student. <u>Gebser</u>, 118 S. Ct. at 2000. In <u>Gebser</u> the Court also rejected the petitioners' argument that a school district could be held liable under Title IX based on constructive knowledge. The Court held, instead, that

---

[35]<u>Id.</u> ¶ 46.

[36]<u>Id.</u> ¶¶ 78-82.

[37]<u>Id.</u> ¶ 68.

[38]<u>See</u> Plaintiffs' Response to HISD's Motion to Dismiss, Docket Entry No. 24, p. 8.

school district liability could only be premised on actual knowledge of a school "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [federal funding] recipient's behalf." Gebser 118 S. Ct. at 1999.  Contrary to plaintiffs' argument, Gebser did not set forth a standard of "actual notice" based on constructive notice that a teacher might possibly be involved in a sexual relationship with a student.[39]   See Davis, 119 S. Ct. at 1671 (recognizing that in Gebser the Court "declined the invitation to impose liability under what amounted to a negligence standard — holding the district liable for its failure to react to teacher - student harassment of which it knew or *should have* known. . . . Rather, we concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX.").  See also Doe v. Northside I.S.D., 884 F. Supp. 2d 485, 493 (W.D. Tex. 2012) (finding no actual knowledge of abuse despite allegations that teacher had "boundary" issues, hugged plaintiff, and gave chest bumps); P.H. v. School District of Kansas City, Missouri, 265 F.3d 653, 659 (8th Cir. 2001) (teacher complaints about student's tardiness and absences from class and general complaints about teacher spending too much time with student insufficient to establish school district's actual

---

[39]The cases plaintiffs cite in support of their contention that constructive knowledge provides a sufficient basis on which to ground Title IX liability all predate the Supreme Court's opinions in Gebser, 118 S. Ct. at 1989, and Davis, 119 S. Ct. at 1661.

knowledge of sexual abuse); <u>Doe v. Flaherty</u>, 623 F.3d 577, 585 (8th Cir. 2010) ("A student's familiar behavior with a teacher or even an 'excessive amount of time' spent with a teacher, without more, does not 'automatically give rise to a reasonable inference of sexual abuse.'").

Plaintiffs' complaint contains detailed and graphic allegations of fact capable of proving that A.W. was sexually abused and harassed by her dance teacher, Feenstra.[40]   But plaintiffs' complaint contains no allegations of fact capable of proving that while A.W. was a student at Humble High School that any specific person apart from Feenstra, had actual knowledge that she and A.W. had a sexual relationship.  Instead, plaintiffs merely recite the elements of a Title IX cause of action and conclusorily assert that "School Officials" had "actual notice" of "the inappropriate relationship."[41]

Moreover, even assuming arguendo that apart from Feenstra, the "School Officials" identified in this action, i.e., Superintendent Sconzo, Principal Ned, Assistant Principals Melendez, McHale, and Stowers, and Guidance Counselor Narcisse, all had authority to address Feenstra's abuse of A.W. and to institute corrective

---

[40]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶¶ 40-54.

[41]<u>Id.</u> ¶ 87.  <u>See also id.</u> ¶ 19 (defining the term "School Officials" as used in Plaintiffs' Original Complaint to mean "Feenstra, Sconzo, Ned, McHale, Melendez, Stowers, and McHale." Since "McHale" is mentioned twice and Narcisse is not mentioned at all, the second reference to "McHale" is likely intended to mean guidance counselor Narcisse.).

measures on HISD's behalf, plaintiffs have nevertheless failed to
state a claim for which relief may be granted under Title IX
because plaintiffs have failed to allege facts capable of proving
that — apart from the alleged abuser, Feenstra — any of the "School
Officials" identified in their complaint actually knew that
Feenstra had a sexual relationship with A.W. See Iqbal, 129 S. Ct.
at 1949 ("[R]ecitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."). See
also Gebser, 118 S. Ct. at 2000 ("knowledge of the wrongdoer
himself is not pertinent to the analysis").

> **(2)   Alleged Facts Are Not Capable of Proving
> HISD's Actual Knowledge of Significant Risk
> that Sexual Abuse Would Occur**

Plaintiffs argue that their Original "Complaint also provides
notice at ¶ 94(b) that HISD knew or should have known of Feenstra's
prior instances of inappropriate conduct and therefore had actual
notice of a substantial risk of sexual harassment to students prior
to A.W.'s complaint."[42]   Paragraph 94(b) of Plaintiffs' Original
Complaint alleges that

> [a]lthough parents complained to School Officials that
> there were was something unusual about Feenstra's
> relationship with A.W., the School Officials did nothing.
> Rather than investigate, the School Officials engaged in
> a pattern of ignoring the complaints and allowing the
> conduct to continue.[43]

---

[42]Plaintiffs' Response to HISD's Motion to Dismiss, Docket
Entry No. 24, p. 8.

[43]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 94(b).

Plaintiffs argue that

> [t]he conduct alleged in paragraphs 55-69, 88-95 and 105
> provides facts establishing that HISD and the other
> defendants had information indicating that Feenstra and
> her sexually suggestive conduct towards female dancers
> (e.g. A.W.) established a substantial danger to students.
> Plaintiffs also offer evidence that students and parents
> made official complaints to HISD officials of sexual
> misconduct by Feenstra sufficient to indicate that she
> posed a substantial risk to sexually abuse students such
> as A.W.   See, ¶¶ 56, 64.   These complaints were not
> simply complaints about an "inappropriate" relationship;
> the complaints alerted school officials to sexual
> harassment and suspected sexual misconduct.[44]

Citing ¶¶ 56 and 64 of their Original Complaint, plaintiffs also

argue that

> [t]he Complaint also provides facts that students and
> parents made official complaints to HISD officials of
> sexual misconduct by Feenstra sufficient to indicate that
> she posed a substantial risk to sexually abuse students
> such as A.W. . . . These complaints are not simply
> complaints about an "inappropriate" relationship; the
> complaints alerted school officials to sexual harassment
> and suspected sexual misconduct.   These publicly-aired
> discussions and complaints supplied actual knowledge to
> HISD officials.[45]

Despite plaintiffs' assertions to the contrary, the facts

alleged in their complaint allege only that parents and students

complained that Feenstra had an "inappropriate," "obsessive and

unusual relationship" with A.W.[46] Nowhere in plaintiffs' complaint

are there factual allegations that any student or parent ever

---

[44]Plaintiffs' Response to HISD's Motion to Dismiss, Docket
Entry No. 24, p. 9.

[45]Plaintiffs' Surreply to Defendants' Motions to Dismiss,
Docket Entry No. 34-1, p. 8.

[46]See Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 56.

complained to any HISD official that Feenstra and A.W. had a sexual relationship, or that Feenstra had in the past had a sexual relationship with a student.   Thus, plaintiffs have failed to allege facts capable of proving that HISD officials had actual knowledge of a substantial risk that Feenstra would sexually abuse A.W. or any other student.

The lack of factual allegations capable of proving either that Feenstra had a history of sexual misconduct with students or that any HISD official knew that Feenstra had such a history stands in sharp contrast to the factual allegations in the cases that plaintiffs cite in support of their arguments that the facts alleged in their complaint are sufficient to withstand HISD's motion to dismiss their Title IX claims.[47]   See, e.g., Gordon ex rel. Gordon v. Ottumwa Community School District, 115 F. Supp. 2d 1077, 1082 (S.D. Iowa 2000) (rejecting plaintiffs' contention that sexually inappropriate comments in class provided school officials actual notice of a sexual relationship between teacher and student but agreeing with plaintiffs that school officials' knowledge that teacher had in the past hugged a student and then kissed that student on the lips and patted that student's buttocks placed the school district on notice that the teacher presented a risk of sexually inappropriate conduct); Doe v. School

---

[47]Plaintiffs' Response to HISD's Motion to Dismiss, Docket Entry No. 24, pp. 7-13; and Plaintiffs' Surreply to Defendants' Motions to Dismiss, Docket Entry No. 34-1, pp. 7-8.

Administrative District No. 19, 66 F. Supp. 2d 57, 63 (D. Me. 1999) (actual notice may be found when the district had notice that the teacher had abused other students in the past); N.B. v. San Antonio I.S.D., Civil Action No. SA-05-CA-0239-XR, 2007 WL 4205726, *4 (W.D. Tex. November 27, 2007) (principal was informed by individual that she saw a school district police officer inappropriately touching a student's breast and grabbing the student's buttocks); Warren ex rel. Warren v. Reading School District, 278 F.3d 163, 172-73 (3d Cir. 2002) (holding that memorandum from principal to teacher directing the teacher to stop playing classroom games that involved physical contact constituted evidence that the principal had "actual knowledge" that the teacher was abusing students). Accordingly, the court concludes that plaintiffs have failed to allege facts capable of proving that any HISD official had actual knowledge of substantial risk that Feenstra would sexually abuse A.W. or any other student.

**B.   Counts 2 and 3: § 1983 Claims Subject to Dismissal**

Counts 2 and 3 of Plaintiffs' Original Complaint assert claims under 42 U.S.C. § 1983 for violations of A.W.'s constitutional rights to equal protection and due process, respectively.  HISD and all of the individually named defendants except Feenstra argue that plaintiffs' § 1983 claims are subject to dismissal because they are time-barred, and because plaintiffs have failed to allege facts capable of stating a § 1983 claim for which relief may be granted.

1.   Applicable Law

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008) (quoting Moore v. Willis I.S.D., 233 F.3d 871, 874 (5th Cir. 2000)).

Defendants do not dispute that plaintiffs have alleged facts capable of satisfying the two requirements for stating a § 1983 claim with respect to A.W., but do dispute that plaintiffs have alleged any violation of King-White's constitutional rights. The allegations in plaintiffs' complaint and the arguments in plaintiffs' responses to defendants' motions to dismiss contain lengthy descriptions of the ways that plaintiffs allege A.W.'s constitutional rights to equal protection and due process were violated when she was abused by Feenstra, her dance teacher. But neither plaintiffs' complaint nor plaintiffs' responses discuss what, if any, constitutional right of King-White the defendants violated. Instead, citing Troxel v. Granville, 120 S. Ct. 2054, 2060 (2000), plaintiffs merely state in a footnote to their discussion of King-White's ability to assert Title IX claims that

> [i]n addition to Mary King-White's standing under Title IX, the Supreme Court has observed that '[t]he liberty interest . . . of parents in the care, custody, and control of their children — is perhaps the oldest of

the fundamental liberty interests recognized by this Court.'[48]

Missing from plaintiffs' complaint or responses to defendants' motions to dismiss are any allegations or argument that defendants' conduct violated King-White's constitutional rights. Thus, plaintiffs have not alleged facts capable of stating a § 1983 claim for violation of King-White's constitutionally protected rights.

The Fifth Circuit has held that school children have a liberty interest in their bodily integrity protected by the Due Process Clause of the Fourteenth Amendment, and that physical sexual abuse by a school employee violates this right. See Doe v. Taylor I.S.D., 15 F.3d 443, 451-52 (5th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 70 (1994). Moreover, there does not appear to be any dispute that plaintiffs have alleged facts capable of proving that at least some of Feenstra's wrongful conduct occurred on school property, and that Feenstra used her position as a dance teacher to molest A.W. Thus, plaintiffs have alleged facts capable of proving that Feenstra was acting under color of state law for the purposes of the pending motions to dismiss. See Taylor I.S.D., 15 F.3d at 452 n.4 ("[I]f a 'real nexus' exists between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher, then the teacher's conduct is taken under color of state law.").

---

[48]Plaintiffs' Response to HISD's Motion to Dismiss, Docket Entry No. 24, p. 14 n.4.

In Taylor I.S.D. the Fifth Circuit ruled that absent allegations to the contrary, the § 1983 due process claim of a student who was sexually abused by a teacher superseded any possible equal protection claim that the student could raise based on the same misconduct. Id. at 458. Since like the plaintiff in Taylor I.S.D. plaintiffs here "do not claim that the damages that [they] could recover . . . based on the alleged violation of [A.W.'s] equal protection rights would be any more extensive than the damages that they could recover based on the substantive due process violation," id., the court concludes that there is no need to consider the claims for violation of A.W.'s rights to equal protection separately. See Doe v. Beaumont I.S.D., 8 F. Supp. 2d 596, 613 (E.D. Tex. 1998). Thus, for purposes of the pending motions to dismiss, the court concludes that plaintiffs have alleged facts capable of proving that A.W.'s constitutionally protected right to bodily integrity was violated by Feenstra who was, at the time, a public school teacher acting under color of state law. The issue is whether plaintiffs' allegations are sufficient to hold HISD and the six School Officials named as individual defendants liable for Feenstra's violation of A.W.'s constitutionally protected rights.

### 2.   Application of the Law to the Alleged Facts

#### (a)   Plaintiffs' § 1983 Claims Are Time-Barred

For the reasons stated above in § III.A.2(d) with respect to the plaintiffs' Title IX claims, the court concludes that

plaintiffs' § 1983 claims are time-barred.  See Wilson, 105 S. Ct. at 1941 (holding that civil rights claims arising under 42 U.S.C. § 1983 within a particular state should be governed by that state's statute of limitations for personal injury claims); Owens, 109 S. Ct. at 582 (holding that claims arising under § 1983 within a particular state should be governed by that state's "general or residual statute for personal injury actions").

    (b)  HISD Is Entitled to Dismissal of § 1983 Claims

    HISD argues that the claims asserted against it under § 1983 are subject to dismissal because plaintiffs' allegations of fact are incapable of establishing that an official policy, custom, or practice of HISD was the moving force behind the alleged violations of A.W.'s constitutional rights.[49]  In contrast to a Title IX claim, in which liability may be established by showing that a single school administrator responded to harassment with deliberate indifference, § 1983 requires proof that the harassment was the result of the school district's official policy, custom, or practice.  See Fitzgerald v. Barnstable School Comm., 129 S. Ct. 788, 797 (2009).

    In Monell v. Department of Social Services of the City of New York, 98 S. Ct. 2018, 2022, 2035-36 (1978), the Supreme Court held that municipalities and other local government entities such as school districts are "persons" subject to suit under 42 U.S.C.

---

[49]HISD's Motion to Dismiss, Docket Entry No. 16, pp. 19-24.

§ 1983, but that such entities cannot he held liable on a
respondeat superior basis, i.e., a local government cannot be held
liable simply because one of its employees violated a person's
federal rights.  For a local governmental entity to be held liable
under § 1983, the entity itself must cause the violation through
its policies.   Id. at 2037-38 ("[I]t is when execution of a
government's policy or custom, whether made by its lawmakers or by
those whose edicts or acts may fairly be said to represent official
policy, inflicts the injury that the government as an entity is
responsible under § 1983.").   Absent such an official policy,
custom, or practice, a municipality may only be held liable if the
discriminatory practice is "so permanent and well settled as to
constitute a 'custom or usage' with the force of law." Adickes v.
S.H. Kress & Co., 90 S. Ct. 1598, 1614 (1970).  Thus, to state
§ 1983 claims against HISD, plaintiffs must allege facts capable of
proving "three elements:  a policymaker; an official policy; and a
violation of constitutional rights whose 'moving force' is the
policy or custom." Piotrowski, 237 F.3d at 578 ("the unconstitu-
tional conduct must be directly attributable to the municipality
through some sort of official action or imprimatur").

### (1)  Policymaker Allegations Fail

     HISD argues that it is entitled to dismissal of plaintiffs'
§ 1983 claims because plaintiffs have not alleged facts capable of
proving that HISD's final policymaker approved or even knew about

-43-

the unconstitutional conduct about which plaintiffs complain.
Plaintiffs respond that they have sufficiently pled facts that
HISD's Board of Trustees delegated final policymaking authority to
the School Officials identified in their complaint, and that those
School Officials failed to train their employees to identify and
prevent sexual abuse of students, and failed to supervise,
investigate, or discipline the abuser, Feenstra.

Identification of the "final policymaker" is a question of
state law. See City of St. Louis v. Praprotnik, 108 S. Ct. 915,
928 (1988). The "final policymaker" is the official or officials
whose decisions are unconstrained by policies imposed by a higher
authority. See Beattie v. Madison County School District, 254 F.3d
595, 603 (5th Cir. 2001) (explaining that a superintendent is not
a final policymaker because her decision was subject to review by
the school board). Under Texas law the final policy-making
authority for a school district is the district's board of
trustees. See Texas Education Code §§ 11.151 & 11.1511. See also
Rivera v. Houston I.S.D., 349 F.3d 244, 247 (5th Cir. 2003)
(quoting Tex. Educ. Code § 11.151(b) ("Texas law unequivocally
delegates to the Board 'the exclusive power and duty to govern and
oversee the management of the public schools of the district.'")).

Plaintiffs' Original Complaint fails to allege facts capable
of linking any unconstitutional policy, practice, or custom to
HISD's Board of Trustees. Instead, plaintiffs allege that the HISD
Board of Trustees delegated final policymaking authority to the six

School Officials who are individually named as defendants in this action, i.e., the superintendent (Sconzo), the principal (Ned), the assistant principals (Melendez, McHale, and Stowers), and the guidance counselor (Narcisse).   But missing from plaintiffs' complaint is any cite to state or local law permitting HISD's Board of Trustees to delegate final policymaking authority to the identified School Officials.   See Rivera, 349 F.3d at 248 (distinguishing decision-making from policy-making).   Also missing from plaintiffs' complaint are any allegations of fact capable of proving that HISD's board delegated policymaking authority to any of the School Officials identified in plaintiffs' complaint.   See McCall v. Dallas I.S.D., 169 F. Supp. 2d 627, 635 (N.D. Tex. 2001) (plaintiff's complaint was deficient because it failed "to allege any facts supporting a conclusion" that the school board delegated policymaking authority to the superintendent).

### (2)   Policy, Custom, or Practice Allegations Fail

Plaintiffs allege that the HISD Board of Trustees adopted "official" policies pertaining to child abuse, sexual abuse, and harassment,[50] but do not allege that these official policies required school staff to ignore abuse of students, to conduct faulty investigations, or to discriminate against students. Instead, plaintiffs allege that HISD had a "policy, practice, or

_____

[50]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶¶ 72, 100); Plaintiffs' Response to HISD's Motion to Dismiss, Docket Entry No. 24, p. 25.

custom, official and/or unofficial" of providing less protection to same-sex female assault victims.[51]  Plaintiffs also allege that HISD did not adequately train, supervise and/or discipline its employees giving rise to an official and/or unofficial policy or custom condoning misconduct such as that perpetrated by Feenstra.  Thus, instead of pointing to a formally adopted policy that was the "moving force" behind the alleged constitutional violations, plaintiffs allege that HISD is liable under § 1983 because the six School Officials identified in their complaint failed to protect A.W., failed to investigate Feenstra's relationship with A.W., failed to train HISD employees to recognize signs of sexual abuse, and failed to supervise or discipline Feenstra.  Plaintiffs argue that, by these omissions, defendants Sconzo, Ned, Melendez, McHale, Stowers, and Narcisse acted with deliberate indifference toward the constitutional rights of A.W. and her mother, King-White, and that this omission is evidence that HISD had a custom of deliberately ignoring acts of sexual abuse between HISD teachers and students.

Acts that do not rise to the level of official policy may nonetheless create governmental liability if they are sufficiently widespread and pervasive to constitute a "custom" or "practice." To survive a motion to dismiss on an unconstitutional custom or practice claim, plaintiffs must point to factual allegations sufficient to allow a reasonable inference that there was a pattern

---

[51]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶¶ 102-03.

of misconduct involving similar acts.  See Zarnow v. City of Wichita Falls, Texas, 614 F.3d 161, 169 (5th Cir. 2010), cert. denied, 131 S. Ct. 3059 (2011) ("A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct.").  Moreover, "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."  Peterson v. City of Fort Worth, Texas, 588 F.3d 838, 851 (5th Cir. 2009), cert. denied, 131 S. Ct. 66 (2010).  Acts of sexual harassment by a teacher directed solely at a single student do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter.  See McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989) (recognizing that a pattern requires "sufficiently numerous prior incidents"); Pineda v. City of Houston, 291 F.3d 325 (5th Cir. 2002) (holding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry in one of the nation's largest cities and police forces).

Plaintiffs have not alleged facts capable of proving that there were other incidents of teacher-student sexual misconduct at Humble High School or at any other HISD school.  Nor have plaintiffs alleged facts capable of proving that other incidents of

teacher-student sexual abuse occurred long enough or frequently enough to warrant attributing knowledge or constructive knowledge to HISD's Board of Trustees that such conduct was caused by defective policies, or by the board's failure to adopt different policies. "[P]roof of a single instance of unconstitutional activity is not sufficient for § 1983 municipal liability." Valentine Foundation v. Uphoff, 211 F. App'x 276, 278 (5th Cir. 2006) (per curiam) (citing McConney, 863 F.2d at 1184 ("Isolated instances . . . are inadequate to prove knowledge and acquiescence by policymakers.")). Plaintiffs' claims that HISD failed to train, supervise, or discipline their employees are similarly deficient due to plaintiffs' failure to allege facts capable of proving a pattern of prior incidents. See Sanders-Burns v. City of Plano, 594 F.3d 366, 382 (5th Cir. 2010). Nor have plaintiffs alleged facts capable of proving that the need for more training, supervision, or discipline was "obvious and obviously likely to result in a constitutional violation" as required to support liability based on a single incident. Id. Because plaintiffs have failed to allege facts capable of proving a pattern of constitutional violations that would have made it obvious to HISD's Board of Trustees that different policies, training, supervision, or discipline were needed to prevent teachers from sexually abusing students, plaintiffs' allegations of fact are not sufficient to state a § 1983 claim against HISD based on their assertions that

HISD maintained a custom or practice of providing less protection to same-sex female assault victims or of deliberately ignoring acts of teacher-student sexual misconduct.

> (c)  Individual Defendants Are Entitled to Dismissal of
> § 1983 Claims

The individual defendants argue that the § 1983 claims against them are subject to dismissal because the claims asserted against them in their official capacities duplicate the claims asserted against HISD; and because they are entitled to qualified immunity from the claims asserted against them in their personal capacities.

### (1)  Official Capacity § 1983 Claims Duplicate Claims Asserted Against HISD

The individual defendants argue that "Plaintiffs' constitutional . . . claims against Defendants Sconzo, Ned, Melendez, McHale, Stowers, and Narcisse in their official capacities should be dismissed on grounds of redundancy."[52]  The individual defendants explain that "[b]ecause [their employer] Humble ISD is already a named defendant in this lawsuit, there is no legal or practical reason to retain the claims against the individual defendants in their official capacities."[53]  Plaintiffs have not responded to the individual defendants' argument that the

---

[52]Individual Defendants' Motion to Dismiss, Docket Entry No. 17, p. 4.

[53]Id.

-49-

§ 1983 claims asserted against them in their official capacities should be dismissed as duplicating claims asserted against HISD.

As public officials, the individual defendants may be sued under § 1983 in either their official or their personal capacities. Hafer v. Melo, 112 S. Ct. 358, 361-63 (1991) (citing Kentucky v. Graham, 105 S. Ct. 3099 (1985)).

> [T]he distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." . . . State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. . . . By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

Id. at 362. The real party in interest in an official-capacity suit is the governmental entity, not the named official. Id. at 361 (citing Graham, 105 S. Ct. at 3105) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). See Turner v. Houma Municipal Fire and Police Civil Service Board, 229 F.3d 478, 483 (5th Cir. 2000) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' . . . Accordingly, a § 1983 suit naming defendants in only their 'official capacity' does not involve personal liability to the individual defendant.").

Plaintiffs have asserted § 1983 claims against all defendants without stating whether these claims are asserted against the

individual defendants in their official or personal capacities. Because any § 1983 claims asserted against the individual defendants in their official capacities would duplicate the § 1983 claims asserted against HISD, the individual defendants are entitled to dismissal of any § 1983 claims that plaintiffs have asserted or attempted to assert against them in their official capacities.   See Jenkins v. Board of Education of the Houston I.S.D., 937 F. Supp. 608, 613 (S.D. Tex. 1996) ("[B]ecause a suit against a public employee in his or her official capacity is simply another way to sue the public entity, Jenkins cannot show that he would be prejudiced by the dismissal of the individual HISD defendants from this case in their official capacities, as HISD is already a defendant.").

### (2)   Individual Defendants Entitled to Qualified Immunity on Personal Capacity § 1983 Claims

Asserting that they are governmental employees entitled to qualified immunity, the individual defendants argue that the § 1983 claims asserted against them in their personal capacities are subject to dismissal because "[t]here are no allegations giving rise to any reasonable inference that any of them knew about, and were deliberately indifferent to, an obvious risk that A.W. would be sexually assaulted or harassed.  Therefore, they are immune."[54] Plaintiffs respond that the § 1983 claims asserted against the individual defendants are not subject to dismissal because

---

[54]Id. at 14.

plaintiffs' complaint makes clear that the individual defendants were not only Feenstra's supervisors but also were aware of and deliberately indifferent to violations of A.W.'s constitutional rights to due process and equal protection, and that the individual defendants' failure to protect A.W. caused A.W. to be injured.[55]

To state personal-capacity claims under § 1983 plaintiffs must allege that while acting under color of state law defendants were personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that the defendants' wrongful actions were causally connected to such a deprivation. James, 535 F.3d at 373. A supervisor cannot be held personally liable under § 1983 "for his subordinate's actions in which he had no involvement." Id. Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated federal law. Iqbal, 129 S. Ct. at 1949. In order for school officials to be held personally liable for a subordinate's sexual abuse of a student plaintiffs must plead facts capable of proving that:

> (1) the defendant[s] learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and

---

[55]Plaintiffs' Response to Motion to Dismiss of Defendants Guy Sconzo, Charles Ned, Juan Melendez, Tammy McHale, Craig Stowers and Alicia Narcisse and Brief in Support ("Plaintiffs' Response to Individual Defendants' Motion to Dismiss"), Docket Entry No. 25, pp. 14-22.

(2)  the defendant[s] demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3)  such failure caused a constitutional injury to the student.

Taylor I.S.D., 15 F.3d at 454.

Public officials sued in their personal capacities under § 1983 are shielded from suit by the doctrine of qualified immunity. Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 812 (2009). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation;' . . . it is effectively lost if a case is erroneously permitted to go to trial." Id. (quoting Mitchell v. Forsyth, 105 S. Ct. 2806, 2815 (1985)). The doctrine of qualified immunity was created to balance the interest of compensating persons whose federally protected rights have been violated against the fear that personal liability might inhibit public officials in the discharge of their duties. See Johnston v. City of Houston, Texas, 14 F.3d 1056, 1059 (5th Cir. 1994). The qualified immunity analysis involves a two-step inquiry: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. Pearson, 129 S. Ct. at 815-16 (citing Saucier, 121 S. Ct. at 2155). It is within the discretion of the district court to decide which of the two steps to address first. Id. at 818. Courts examine each defendant's actions independently to determine whether he or she is

entitled to qualified immunity.  Newman v. Guedry, 703 F.3d 757, 762 (5th Cir. 2012), cert. denied, 134 S. Ct. 162 (2013) (citing Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007)).  Once a defendant asserts qualified immunity the burden shifts to the plaintiffs to bear the burden of negating the qualified immunity defense.  See Newman, 703 F.3d at 761.  See also Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc) (recognizing that once a defendant asserts qualified immunity, the plaintiff must "fairly engage" the immunity defense by responding with factual specificity).

Citing ¶¶ 55-69 and 86-95 of their complaint, plaintiffs argue that they have alleged facts capable of proving that each of the individually named defendants "had actual knowledge of the sexual harassment and abuse that A.W. suffered and failed to adequately respond to protect A.W.'s rights.[56]  Plaintiffs argue that these paragraphs allege facts capable of proving that

> (1) Guy Sconzo, Superintendent and supervisor of Charles Ned and Amanda Feenstra; (2) Charles Ned, the High School Principal and immediate supervisor of Amanda Feenstra; (3) Juan Melendez, Assistant Principal and co-supervisor of Amanda Feenstra; (4) Tammy McHale, Assistant Principal and co-supervisor of Amanda Feenstra; (5) Craig Stowers, Assistant Principal and co-supervisor of Amanda Feenstra; and (6) Alicia Narcisse, school counselor/administrator, all had actual knowledge of the sexual harassment and abuse that A.W. suffered and failed to adequately respond to protect A.W.'s rights.[57]

---

[56]Id. at 17.

[57]Id.

Plaintiffs argue that "[a]ll Defendants had a pivotal role in establishing and maintaining the unconstitutional practices and customs that led to the manner in which A.W. was treated."[58]

Plaintiffs have alleged facts capable of establishing that Feenstra spent an excessive amount of time with A.W., that Feenstra left the school grounds with A.W., that Feenstra took A.W. on out-of-town trips during which Feenstra would share a room and a bed with A.W., and that A.W. moved into Feenstra's home.   But plaintiffs have not alleged any facts capable of establishing which, if any, of the individual defendants other than Feenstra knew that Feenstra engaged in sexual misconduct with A.W.

Instead of describing what each defendant allegedly knew or did, plaintiffs make only generic and global references to "School Officials," a term that they define to include Feenstra, the dance teacher who undisputedly abused A.W.[59]   Absent allegations of fact capable of proving which, if any, of the individual defendants other than Feenstra, learned of facts or a pattern of inappropriate behavior pointing plainly toward the conclusion that Feenstra was

_____

[58]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 77.

[59]Id. ¶ 19 (defining "School Officials" as "Feenstra, Sconzo, Ned, McHale, Melendez, Stowers, and McHale"). See also id. ¶¶ 81-82 ("[I]n or about March 2013, Feenstra was arrested and charged with a felony of Improper Relationship with Student, arising out of Feenstra intentionally and knowingly engaging in Deviate Sexual Intercourse with A.W., a student."; "On or about October 23, 2013, Feenstra pleaded guilty to an improper relationship with a student and was sentenced to 10 years deferred adjudication and probation.").

sexually abusing A.W., plaintiffs have failed to allege facts
capable of proving that any of the individual defendants were
deliberately indifferent to A.W.'s rights by "failing to take
action that was obviously necessary to prevent or stop [Feenstra's]
abuse." Taylor I.S.D., 15 F.3d at 454.  See Doe v. Rains County
I.S.D., 76 F.3d 666, 668-69 & n.2 (5th Cir. 1996) (dismissing
§ 1983 claims brought by student and her parents against school
principal arising from a coach's sexual molestation of the student
because allegations that the principal knew the plaintiff babysat
for the coach, knew the coach walked the plaintiff to her bus, saw
the plaintiff crying and learned that she was having trouble with
a man, and asked another employee if there was anything going on
between the coach and the plaintiff "d[id] not even come close to
those under which this court [denied] the principal qualified
immunity in [Taylor I.S.D., 15 F.3d at 454]"); Hagan v. Houston
I.S.D., 51 F.3d 48, 52 (5th Cir. 1995) ("[b]ecause [principal] had
no information that [coach] posed a threat to students, he could
not have been deliberately indifferent").

     Because plaintiffs have failed to allege facts capable of
proving that any of the individual school-official defendants
except Feenstra knew that Feenstra was sexually abusing A.W.,
plaintiffs have also failed to allege facts capable of proving that
any of these defendants were deliberately indifferent to A.W.'s
rights by "failing to take action that was obviously necessary to
prevent or stop [Feenstra's] abuse."  Taylor, 15 F.3d at 454.

Thus, plaintiffs' allegations are neither sufficient to state a personal capacity claim under § 1983 against any of the individual defendants except Feenstra, nor sufficient to overcome these defendants' assertions of qualified immunity. Accordingly, the individual defendants' motion to dismiss the § 1983 claims asserted against them in their personal capacities will be granted.

**C.   State Law Claims**

Plaintiffs assert claims against all defendants, including the individual defendants, based on state law for failure to train, supervise, and discipline, and for sexual assault and battery, negligence and gross negligence, bystander recovery, and infliction of emotional distress in violation of Texas common law. HISD argues that the state law claims asserted against it are barred by sovereign immunity, and the individual defendants argue that the state law claims asserted against them are barred by § 22.0511 of the Texas Education Code — the Texas educator immunity statute, and by the Texas Tort Claims Act ("TTCA"), Texas Civil Practices & Remedies Code — § 101.106(e).

### 1.   HISD Is Entitled to Dismissal of State Law Claims

In addition to the federal law claims asserted against HISD, plaintiffs allege claims against HISD based on the common law of the State of Texas for failure to train, supervise, and discipline, and for sexual assault and battery, negligence and gross negligence, bystander recovery, and infliction of emotional

distress.[60]   HISD argues that the state law tort claims should be dismissed for want of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because HISD is absolutely immune from damages arising from common law torts.[61]

School districts in Texas retain their sovereign/governmental immunity from all common law claims unless the Texas Legislature has expressly waived immunity in a specific statute.  See Mission Consolidated I.S.D. v. Garcia, 253 S.W.3d 653, 655 (Tex. 2008). The TTCA provides a limited waiver of immunity for certain suits against governmental entities.  Id.  Under the TTCA the only permissible tort claim against a school district is a claim based on misuse of a motor vehicle.  See Tex. Civ. Prac. & Rem. Code §§ 101.001 and 101.051.  Consequently, plaintiffs cannot assert common law claims for failure to train, supervise, and discipline, and for sexual assault and battery, negligence and gross negligence, bystander recovery, and infliction of emotional distress against HISD.  See Doe v. S&S Consolidated I.S.D., 149 F. Supp. 2d 274, 302 (E.D. Tex. 2001) (dismissing student's physical abuse claims asserted against school district); Hopkins v.

---

[60]Plaintiffs' complaint also cites the Texas wrongful death statute, Tex. Civ. Prac, & Rem. Code §§ 71.001 and 71.021. Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 4.  Since plaintiffs have not alleged any wrongful death, this claim fails as a matter of law.  See Saenz v. City of McAllen, 396 F. App'x 173, 179, 2010 WL 3852358 (5th Cir. October 4, 2010) (unpublished) (Texas wrongful death statute does not waive Texas local governments' governmental immunity).

[61]HISD's Motion to Dismiss, Docket Entry No. 16, p. 5.

Spring I.S.D., 736 S.W.2d 617, 619 (Tex. 1987) (school district was immune from claim based on failure to supervise students); Midland I.S.D. v. Watley, 216 S.W.3d 374, 382 & n.8 (Tex. App. — Eastland 2006, no pet.) (school districts are immune from claims of misrepresentation and assault).  Because plaintiffs have neither alleged nor argued that any of the common law claims that they have asserted in this action are claims for which the Texas Legislature has waived HISD's sovereign immunity, HISD's motion to dismiss the state claims asserted against it will be granted.

   2.   Individual Defendants Are Entitled to Dismissal of State
        Law Claims

   The TTCA contains an election of remedies clause that prohibits plaintiffs from suing both a governmental entity and its employees for tort claims.  See Tex. Civ. Prac. & Rem. Code § 101.106.  See also Garcia, 253 S.W.3d at 657 ("[The Texas Tort Claims Act] force[s] a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable."); Fontenot v. Stinson, 369 S.W.3d 268, 270 (Tex. App. — Houston [14th Dist.] 2011, pet. filed) ("Under the Texas Tort Claim Act's election-of-remedies provision, plaintiffs who are injured by governmental employees must make a sometimes difficult choice of whether they wish to pursue tort claims against either the employee or the employer."). Here, plaintiffs have asserted tort claims against all defendants

for the failure to train, supervise, and discipline, and for sexual assault and battery, negligence and gross negligence, bystander recovery, and infliction of emotional distress.

The TTCA provides that when a tort suit is filed "against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). See also Bustos v. Martini Club, Inc., 599 F.3d 458, 463 (5th Cir. 2010). In its motion to dismiss HISD argues that the state law claims asserted against the individual defendants are subject to dismissal under the TTCA's election of remedies clause.[62] Although plaintiffs argue that the individual defendants are not entitled to dismissal of state law claims "where such claims involve the Individual Defendants' conduct in their personal-capacity,"[63] plaintiffs have not cited any authority that accords different treatment to official and personal capacity tort claims asserted against government employees under Texas law. Moreover, plaintiffs' argument has been rejected by a number of Texas intermediate courts. See Dung Ngoc Huynh v. Washington, 339 S.W.3d 309, 311 (Tex. App. — Dallas, 2011, no pet.); Williams v. Nealon, 394 S.W.3d 9, 12 (Tex. App. — Houston [1st Dist.], 2012, pet. denied); Lund v.

---

[62]Id. at 6 ("[b]ecause the Plaintiffs have sued both Humble ISD and its employees, the employees are entitled to automatic dismissal of all tort claims against them due to operation of the election-of-remedies provision in the Texas Tort Claims Act").

[63]Plaintiffs' Response to Individual Defendants' Motion to Dismiss, Docket Entry No. 25, p. 23.

Giauque, 416 S.W.3d 122, 124-25 (Tex. App. — Fort Worth, 2013, no pet.) (holding that a suit against a governmental employee acting within the scope of his or her employment and sued in his or her individual capacity must be dismissed under § 101.106(f) even if the governmental employer's immunity is not waived by the TTCA). Because HISD's separately filed motion seeks dismissal of the state tort claims asserted against the individual defendants, the individual defendants' motion to dismiss the state law tort claims asserted against them will be granted.

## IV.  Plaintiffs' Request for Leave to Amend Will Be Denied

At the end of their responsive briefing to the defendants' motions to dismiss, the plaintiffs request leave to amend their complaint.  In full, this general request states:

> For the reasons discussed herein, Plaintiffs ask that the Court deny the Motion to Dismiss.  Arguing in the alternative, however, if the Court should determine that more specificity is required in Plaintiffs' Complaint, Plaintiffs request leave to amend the Complaint. Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2).  "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981).  In this event, Plaintiffs would ask for leave to take discovery to secure the additional evidence that HISD has refused to produce in response to requests from the media and A.W.'s family.  That way, a full pleading can be made in the Complaint.[64]

_____

[64]Id. at 30-31.  See also Plaintiffs' Response in Opposition to HISD's Motion to Dismiss, Docket Entry N. 24, p. 45.

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "Although Rule 15(a) 'evinces a bias in favor of granting leave to amend,' it is not automatic." Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996) (quoting Dussouy, 660 F.2d at 598). "A decision to grant leave is within the discretion of the trial court. Its discretion, however, is not broad enough to permit denial if the court lacks a substantial reason to do so." Id. (citing State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298, 1302-1303 (5th Cir. 1995)). Generally, a district court errs in dismissing a complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir.), cert. denied, 119 S. Ct. 156 (1998). If, however, a complaint alleges the plaintiff's best case, there is no need for further amendment. See Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999) (dismissing plaintiff's pro se action because court could perceive of no viable claim plaintiff could include in an amended complaint based on the underlying facts). The Fifth Circuit has also held that in exercising its discretion, a court may consider undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the proposed amendment. See Rosenzweig v. Azurix Corp., 332 F.3d 854,

864 (5th Cir. 2003) (citing <u>Foman v. Davis</u>, 83 S. Ct. 227, 230 (1962)).

The record demonstrates that plaintiffs initiated this action on December 4, 2013 (Docket Entry No. 1), that defendants filed their motions to dismiss on January 22, 2014 (Docket Entry Nos. 16-17), and that plaintiffs responded on February 24, 2014 (Docket Entry Nos. 24-25), by arguing that their Original Complaint is factually sufficient to survive defendants' motions to dismiss. Nevertheless, in the last paragraphs of their responses to the defendants' motions to dismiss plaintiffs include a request for leave to amend unaccompanied by either a proposed amendment or a substantive discussion of the amendments contemplated.  Instead, plaintiffs' request for leave to amend is accompanied by a request for "leave to take discovery to secure the additional evidence that HISD has refused to produce in response to requests from the media and A.W.'s family.  That way, a full pleading can be made in the Complaint."[65]  The law in this circuit is that plaintiffs are not entitled to an opportunity to satisfy the pleading requirements for governmental liability when, in response to a motion to dismiss, the plaintiffs simply declare the adequacy of their complaint and fail to take advantage of the opportunity to amend as a matter of

---

[65]Plaintiffs' Response to HISD's Motion to Dismiss, Docket Entry No. 24, p. 45.  <u>See also</u> Plaintiffs' Response to Individual Defendants' Motion to Dismiss, Docket Entry No. 25, pp. 30-31.

right.  See Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (citing Jacquez v. Procunier, 801 F.2d 789, 792-793 (5th Cir. 1986)).  See also Babb v. Dorman, 33 F.3d 472, 479 (5th Cir. 1994) (affirming district court's refusal to grant plaintiff leave to amend his complaint after it had granted defendant's motion to dismiss because plaintiff had declared the sufficiency of his pleadings and failed to offer a sufficient amended complaint in response to the defendant's motion).

Plaintiffs' request for leave to take discovery to secure additional evidence that HISD has refused to produce in response to requests from the media and A.W.'s family shows that there is no need for further amendment because the plaintiffs have alleged their best case.  Moreover, the court's conclusions that plaintiffs' federal law claims based on Title IX and § 1983 are time-barred, that plaintiffs' state law claims against HISD are barred by sovereign immunity, and that plaintiffs' state law claims against the individual defendants are barred by the Texas Tort Claims Act persuade the court that granting plaintiffs' motion for leave to amend would be futile.  See 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 1487, at 743 (2010) ("several courts have held that if a complaint as amended could not withstand a motion to dismiss . . . then the amendment should be denied as futile").  Accordingly, the plaintiffs' requests for leave to amend will be denied.

### V.  Conclusions and Order

For the reasons explained above, the Motion to Dismiss of Defendant Humble Independent School District (Docket Entry No. 16) is **GRANTED**; the Motion to Dismiss of Defendants Guy Sconzo, Charles Ned, Juan Melendez, Tammy McHale, Craig Stowers, and Alicia Narcisse (Docket Entry No. 17) is **GRANTED**; Plaintiffs' Motion for Leave to File Surreply to Defendants' Replies to Motions to Dismiss (Docket Entry No. 34) is **GRANTED**; and plaintiffs requests for leave to amend asserted in plaintiffs' responses to the defendants' motions to dismiss (Docket Entry Nos. 24 and 25) are **DENIED**. Accordingly, all of the claims that plaintiffs have asserted against the Humble Independent School District, Superintendent Guy Sconzo, Principal Charles Ned, Assistant Principals Juan Melendez, Tammy McHale, and Craig Stowers, and Guidance Counselor Alicia Narcisse are **DISMISSED WITH PREJUDICE**.

**SIGNED** at Houston, Texas, on this the 11th day of June, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE